IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

vs.                                              CRIMINAL ACTION No.: 3:03-CR-68-HTW-LGI

CURTIS JEROME HARDY

## ORDER

BEFORE THIS COURT is a Motion of the petitioner Curtis Jerome Hardy (hereafter "Hardy" or "Petitioner"), a federal prisoner, for Compassionate Release due to the dangers presented by the Covid-19 pandemic. This court previously denied Hardy's Compassionate Release request.  Hardy appealed this court's denial of his first Motion for Compassionate Release, and denial of reconsideration thereof, to the United States Court of Appeals for the Fifth Circuit. Based on a case decided during the pendency of the appeal, *USA v. Shkambi*, 993 F. 3d 388 (5th Cir. 2021), the Fifth Circuit vacated this court's orders denying a reduction of sentence and remanded this cause for further proceedings consistent with the opinion.

Hardy again requests compassionate release on the following bases: (1) he is vulnerable to re-infection of the COVID-19 Delta variant; (2) the disparity between the length of his sentence and those of others similarly situated; (3) a Heroism Act Award; (4) the allegedly lengthy amount of time Hardy has already served; and (5) Hardy's post-offense rehabilitation.

Hardy also has filed several other motions related to his second request for Compassionate Release.  These motions, currently pending before this court, are: 1) Motion to Supplement and Motion to Appoint Counsel **[Docket no. 158];** 2) Motion to expand the record [**Docket no. 162];** 3) Motion for Extension of Time to File Response **[Docket no. 168];** Motion for Leave to file

1

amendment/supplement to Compassionate Release Request (to add information regarding low recidivism score which he attached) **[Docket no. 174];** Motion for leave to file an additional amendment to request compassionate release (adding information about Covid-19 at his prison facility) **[Docket no. 190];** and Motion for Miscellaneous Relief **[Docket no. 212].** This court has considered all of the above motions and finds as follows.

## BACKGROUND

On July 11, 2002, following a two-day jury trial, Hardy was convicted of bank robbery pursuant to 18 U.S.C. § 2113, along with brandishing a firearm during a crime of violence pursuant to 18 U.S.C. § 924(c). This court sentenced Hardy to serve 384 months of imprisonment. The United States Court of Appeals for the Fifth Circuit affirmed his conviction and sentence on direct appeal.

Hardy currently is serving his federal sentence at the Allenwood Federal Correctional Institution in White Deer, Pennsylvania, and is scheduled to be released in March 2032. Hardy is fifty-nine years old and alleges that he has several health conditions, including diabetes (type 2), hypertension, hyperlipidemia, inflamed thyroid, possible cancerous nodules forming in chest area, knee replacement, and the aging process. Hardy also asserts that previously has tested positive for Covid-19.

On January 2, 2020**,** Hardy filed a *pro se* Motion for Compassionate Release [Docket no. 156], which was denied by this court on September 13, 2020 [Docket no. 177]. Shortly after filing the motion for compassionate release, Hardy filed, on February 14, 2020, a Motion to Supplement and for Appointment of Counsel [Docket no. 158]. A review of this latter motion reveals that it does not contain any request for supplementation of any kind; rather, it is strictly a request for

appointment of counsel.  Pursuant to the court's Special Order filed on April 8, 2020, the Office of the Federal Public Defender's office was appointed to represent Hardy, effective May 5, 2020. Hardy, thereafter, was represented relative to the motion for compassionate release by Attorney Princess Williams Abby of the Federal Public Defender's office.  The request for appointment of counsel is, therefore, moot and is dismissed at this juncture.

On May 4, 2020, Hardy filed, *pro se*, a "Motion to Expand the Record", wherein he asked this court's permission to expand the record to include medical records and institutional progress reports.  As stated *supra*, counsel was appointed to represent Hardy on May 5, 2020, and his counsel procured and attached to the Reply brief certain medical records and institutional records as she deemed appropriate. This motion [Docket no.162], then, is also moot.

The government filed its Response in opposition to Mr. Hardy's motion for compassionate release, under seal, on May 21, 2020.  The Defendant, through counsel, filed on July 14, 2020, a Reply to the Government's Response [Docket no.  172] and an Amended Reply on August 7, 2020 [Docket no. 176].   Despite being represented by counsel, Hardy, on July 27, 2020, filed a "Motion to Request Leave to Supplement with Attached Memorandum of Law in Support" [Docket no. 174]. Since Hardy was represented by counsel at the time he submitted this motion, this court will not consider the motion. It is hereby dismissed.

On September 13, 2020, this court entered its order denying Hardy's motion for compassionate release. [Docket no. 177]. This court, under the auspices of 18 U.S.C. §3142(g)[1],

---

[1] (g) Factors to be considered.--The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

     (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

     (2) the weight of the evidence against the person;

     (3) the history and characteristics of the person, including—

held that, to its mind, Hardy is a danger to the community because of the following reasons: (1) the nature and circumstances of his current offense of conviction and criminal history: that when he is not in prison, he engages in dangerous and violent conduct, even after serving terms of imprisonment that are designed to rehabilitate him; (2) the weight of the evidence at his trial and his resultant conviction; (3) his history and characteristics including his past assaultive conduct; his history relating to drug abuse and transactions; his criminal history; and that he was on parole in two different cases at the time of his offense of conviction; and (4) the nature and seriousness of the danger he poses to the community through repeated armed robberies and assaultive conduct. [Docket no. 177, pp. 17-18].

On September 17, 2020, the Petitioner, through counsel, filed a Notice of Appeal, appealing this court's Order denying compassionate release to the United States Court of Appeals for the Fifth Circuit. [Docket no. 178].

While the appeal was pending and while still represented by counsel, Hardy filed a "Motion for Reconsideration and Request to Hold in Abeyance Petitioner's Notice of Appeal until Final Disposition of Motion for Reconsideration under 59(e)". Shortly thereafter, Attorney Williams of the Federal Public Defender's office was allowed to withdraw as appellate counsel for Hardy by the Fifth Circuit Court of Appeals.

---

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required. 18 U.S.C.A. § 3142 (West).

Hardy then filed numerous other motions and documents *pro se*, including the final motion under consideration here: "Emergency Motion for Compassionate Release and/or Amendment to Defendant Motions for Reconsideration Pursuant to Rule 59(e)" filed September 21, 2020.   A motion for leave to file an Amendment to [180] Motion for Reconsideration by Curtis J. Hardy." [Docket no. 190].  This court previously entered its order denying motion [180] referred to in this motion.   This court's Order of March 19, 2020, [Docket no. 201], denied [180] Motion for Reconsideration, granted [182] motion for leave to file amendment to [180], and granted [187] motion for order compelling the public defender's office to provide certain documents.   The current motion, [Docket no. 190] again asks this court to allow leave for amendment to [180].  This relief was previously granted [Docket no. 201], and briefing as to document [180] has been completed. This motion, accordingly, is also moot at this juncture.

Counsel for Hardy  previously also filed, on June 16, 2020, a motion for extension of time to file a Reply. The Reply brief subsequently was filed and treated as timely filed.  This motion [Docket no. 168], thus, is also moot.

On April 6, 2021, Hardy filed a *pro se* notice of appeal of this court's denial of his Motion for Compassionate Release and Motion for Reconsideration [Docket no. 180] to the Court of Appeals for the Fifth Circuit. The Court of Appeals consolidated the previous appeal (that Hardy previously had requested to be held in abeyance) with the second appeal and appointed counsel to represent Hardy. On September 22, 2021, Hardy filed his second Motion for Compassionate Release *sub judice* [Docket no. 206].

On March 3, 2022, the Fifth Circuit vacated this court's judgment denying compassionate release and remanded the matter to this court in light of the Court's decision in *United States v. Shkambi*, 993 F.3d 388 (5th Cir. 2021). [Docket. 214, p. 8].

5

## LAW AND ANALYSIS

A judgment of conviction imposing a sentence of imprisonment " 'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see also* 18 U.S.C. § 3582(c). One such circumstance arises from 18 U.S.C. § 3582(c)(1)(A)(i), commonly referred to as "compassionate release."

### A.  18 U.S.C. § 3582(c)(1)(A)

Compassionate release motions arise under 18 U.S.C. § 3582(c)(1)(A)(i), which provides:

> The court may not modify a term of imprisonment once it has been imposed except that ... the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that ... extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission ....

The first iteration of Section 3582(c), which was enacted as part of the Sentencing Reform Act of 1984,  authorized district courts to grant sentence reductions on the motion of the Director of the Bureau of Prisons ("BOP") if the BOP could establish the following conditions: (1) extraordinary and compelling reasons warranted a sentence reduction; (2) a reduction would be consistent with the applicable policy statements of the Sentencing Commission; and (3) a sentence reduction was warranted after consideration of the sentencing factors in 18 U.S.C.§ §3553(a)[2].

Congress, in drafting §3582(c), did not define "extraordinary and compelling reasons". Congress, instead, delegated that authority to define "extraordinary and compelling reasons" to the

---

[2] The §3553(a) factors are discussed in Section "C" *infra*.

Sentencing Commission, directing it to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *See* Title 28 U.S.C. § 994(t)[3].

The Sentencing Commission, in defining "extraordinary and compelling reasons", promulgated United States Sentencing Guidelines ("U.S.S.G.) § 1B1.13[4]. In application note 1 to § 1B1.13, the Sentencing Commission described four circumstances that constitute "extraordinary and compelling reasons" for purposes of § 3582(c)(1)(A)(i). U.S.S.G. § 1B1.13 cmt. n.1.These circumstances are characterized as: "(1) circumstances arising from certain medical conditions; (2) circumstances arising from the age of the defendant;1 (3) issues arising from the defendant's family circumstances; and (4) other reasons that the BOP agrees are extraordinary and compelling in a specific case". *USA v. Ronnie D. Lewis*, No. 4:12-CR-00098, 2022 WL 10662011, at *2 (E.D. Tex. Oct. 18, 2022).

In 2018, Congress amended § 3582(c)(1)(A) with the passage of the First Step Act. The amendment provided that, in cases where the BOP does not file a compassionate-release motion on the prisoner's behalf, the prisoner may personally file a motion for compassionate

---

[3]Title 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."

[4] Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
    (1)(A) Extraordinary and compelling reasons warrant the reduction; or
      (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
    (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) The reduction is consistent with this policy statement.

U.S.S.G. 1B1.13

release. Following this expansion of who may file a motion under § 3582(c)(1)(A), courts were confronted with the question of whether the Sentencing Commission's definition of "extraordinary and compelling reasons," which was promulgated prior to the First Step Act when such motions could only be filed by the BOP, remained binding on district courts when considering compassionate-release motions. The Fifth Circuit addressed this question in *United States v. Shkambi*, 993 F.3d 388 (5th Cir. 2021).

## B.  THE *SHKAMBI* DECISION

In *Shkambi*, 993 F.3d 388 (5th Cir. 2021), the Fifth Circuit addressed, as a question of first impression, whether U.S.S.G. § 1B1.13 and its commentary bind a district court when it rules on motions filed by defendants on their own behalf after Congress amended §3582(c)(1)(A)[5], commonly referred to the First Step Act, to permit such filings.

After exhausting his administrative remedies, Shkambi filed a motion for compassionate release in the district court, citing as an "extraordinary and compelling reason" for relief his fear of a Covid-19 re-infection because he took immunosuppressant medication for gout. The district court dismissed the motion and found that Shkambi's "extraordinary-and-compelling-reason"

---

[5] (c) Modification of an imposed term of imprisonment.--The court may not modify a term of imprisonment once it has been imposed except that-- (1) in any case— (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that-- (i) extraordinary and compelling reasons warrant such a reduction; or (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; […]

18 U.S.C.A. § 3582 (West).

argument "fail[ed] because it [was] untethered to the Sentencing Commission's binding applicable policy statement in section 1B1.13 of the Sentencing Guidelines." *Shkambi*, 993 F.3d at 399.

Shkambi appealed to the Fifth Circuit, which reversed and remanded the district court's ruling. The Court, recounting the history of §3282(c)(1)(A), held that the First Step Act had made a significant change to the statute. The former version of the First Step Act authorized only the Director of the BOP to file motions for a sentence reduction, whereas, under the amended First Step Act, a defendant could "move on [his] own accord," after exhausting his administrative remedies. *Shkambi*, 993 F.3d at 390. Under the amendment, other aspects of § 3582 remained unchanged. *Id* at 391.

The *Shkambi* court also held "that neither the policy statement nor the commentary to it binds a district court addressing a prisoner's own motion under §3582", and that "the district court…is bound only by §3582(c)(1)(A)(i) and, as always, the sentencing factors in §3553(a). *Id* at 392. Accordingly, while U.S.S.G. § 1B1.13 dictates the meaning of "extraordinary and compelling reasons" when a § 3582(c)(1)(A) motion is filed by the BOP on a prisoner's behalf, it does not do so when, as here, a § 3582(c)(1)(A) motion is filed by a prisoner himself. *See id.* ("[T]he policy statement continues to govern where it says it governs—on the motion of the Director of the [BOP]. But it does not govern here—on the newly authorized motion of a prisoner." (internal quotations omitted)).

Under the intervening Fifth Circuit authority in *Shkambi*, then, this court is not bound by §1B1.13. This court, rather, must determine what constitutes an "extraordinary and compelling reason" under §3582(c)(1)(A)(i) and whether 18 U.S.C. § 3553(a) factors apply.

## C.  18 U.S.C. § 3553(a) Factors

As stated *supra*, even if extraordinary and compelling reasons exist, they must outweigh

the 18 U.S.C. § 3553(a) factors to warrant sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A).

These factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.] ...
>
> (5) any pertinent [Sentencing Commission] policy statement.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

*Id.* § 3553(a).

The Fifth Circuit, in remanding the matter *sub judice* for reconsideration, considered

whether this court independently denied Hardy relief under §3553(a). The Court decided:

> that the district court did not rely on §3553(a) when it denied Hardy's compassionate release motion. The court reasoned that even if "extraordinary and compelling reasons" warrant a sentence reduction, Hardy still posed a danger to the community such that his motion must be denied. That was a §3142(g) inquiry that treated the policy statement as binding…The district court never expressly relied on §3553(a), unlike in our recent

decisions affirming district courts' denial of compassionate release motions in which the courts clearly stated §3553(a) was an independent basis for denial.

[Docket no. 214, p. 7]. The Court determined that "because [this court]….anchored its denial of Hardy's motion under §3142(g), not § 3553(a)", this court's Order of denial must be remanded.

## D.  DISCUSSION

The Fifth Circuit, like many other circuits, has acknowledged that "compassionate release due to a medical condition is an extraordinary and rare event."  *United States v. Chambliss*, No. MO:05-CR-00052-DC, 2019 WL 13217464, at *2 (W.D. Tex. July 29, 2019), *aff'd,* 948 F.3d 691 (5th Cir. 2020) (internal citations omitted). Courts, instead, are given discretion to reduce a sentence under very limited circumstances and may refuse to reduce a sentence despite the defendant's eligibility, as a matter of discretion, upon weighing the § 3553(a) sentencing factors. *Id.* (referencing *United States v. Hafley*, 650 Fed. Appx. 845, 846 (5th Cir. 2016)).

Hardy, accordingly, then may succeed on his successive motion for compassionate release if: (1) extraordinary and compelling reasons exist, such that warrant a sentence reduction; and (2) 18 U.S.C. § 3553(a) factors are met.

Hardy asserts that the following "extraordinary and compelling" reasons warrant release under the Compassionate Release Act: Hardy's medical conditions coupled with COVID-19 under 18 U.S.C. § 3582, namely: Hypertension, Diabetes, Neoplasm of an unspecified behavior of his respiratory system. Hardy is 59 years old. Hardy also references his Race (African American) as a possible factor. Hardy asserts that the 20 years he has already served is sufficient but not greater than necessary for the crime for which he originally was sentenced, and that he has been successfully rehabilitated. Hardy, pointedly, calls this court's attention to his spotless record during this decades-long incarceration period and, again, calls this court's attention to the Heroism Award he received while incarcerated.

The Government, contrariwise, contents that this court should deny Hardy's request for compassionate release because he has failed to show any extraordinary and compelling reason for reason. Further, says the Government, the § 3553(a) factors balance against any potential extraordinary and compelling reason for release. See *Chambliss*, 948 F.3d at 693-94  (affirming district court's denial of defendant's motion for compassionate release on § 3553(a) grounds, including defendant's "'severe' conduct, his serious drug crime, and his criminal history, which included aggravated robbery", the commission of the offense while on parole, and the insufficient punishment of having served only 14 years of defendant's 30-year sentence").

The Government alleges that at Allenwood Federal Correctional Complex (FCC), which includes FCI Allenwood-Medium, where Hardy currently is housed, BOP fully vaccinated 435 staff members and 1,797 inmates. *See* www.bop.gov/coronavirus. Allenwood FCC has a total of 2,740 inmates, which is the sum of inmates housed at FCI Allenwood-Low, FCI Allenwood-Medium, and Allenwood USP. This vaccination data indicates that more than 65% of the inmates at Allenwood FCC have been fully vaccinated. Notably, says the Government, Hardy refused to be vaccinated[6] [Docket no. 210-1 at 5].

### *Hardy's Medical Conditions*

Hardy, notwithstanding his refusal to be vaccinated, argues that he is entitled to compassionate release because he suffers from several ailments that place him at a higher risk of complications associated with Covid-19. The Centers for Disease Control ("CDC") updated its list

---

[6] Hardy asserts that throughout his childhood, his mother warned against vaccinations because of the "Tuskegee Experiment". This Experiment refers to the U.S. Public Health Service (USPHS) Syphilis Study at Tuskegee, Alabama, which was conducted between 1932 and 1972 to observe the natural history of untreated syphilis. As part of the study, researchers did not collect informed consent from male African American participants they wrongfully injected, and they did not offer treatment, even after it was widely available. As a result, hundreds of African American men were wrongfully injected, leading more than 100 deaths.

of risk factors on August 20, 2021.This list reports a list of conditions that can make an individual "more likely to get severely ill from COVID-19."[7]

The Government states that Hardy's alleged "emergent' medical condition is largely the same as his previous request for compassionate release and motion to reconsider.  [See Docket Nos. 156, 164, 180]. Hardy's additional complaints concern certain "lingering effects" of having contracted the virus, namely, "poor function in his chest and nostril as a result of contracting Covid-19 on Dec. 22, 2020", as well as possible exacerbation of his  "several chronic illnesses, including Type II Diabetes, Hypertension (high blood pressure), hyperlipidemia, inflamed thyroids, gastro-esophageal reflux disease, possible cancerous nudles [sic] forming in his chest area, [and] knee replacement surgery". [Docket no. 206 at 2].

Hardy has not presented any new medical conditions or factors that this court already did not take under advisement during Defendant's original request for compassionate release, including after his Motion for Reconsideration when Defendant tested positive for COVID-19.

---

[7] The Centers for Disease Control lists a number of physical conditions that place individuals with those conditions at "higher risk": Those at higher-risk for severe illness from COVID-19 are:
   • People 65 years and older
   • People of all ages with underlying medical conditions, particularly if not well controlled, including:
      o Cancer
      o Chronic kidney disease
      o Chronic lung diseases, including COPD, or moderate to severe asthma, interstitial lung disease, cystic fibrosis, and pulmonary hypertension o Dementia or other neurological conditions
      o Diabetes (type 1 or type 2)
      o Down syndrome o Heart conditions (such as heart failure, coronary artery disease, cardiomyopathies or "possibly" hypertension)
      o HIV infection o Immunocompromised state (weakened immune system) o Liver disease
      o Overweight (BMI between 25-30) and obesity (BMI between 30-40 and sever obesity with BMI over 40)
      o Pregnancy o Sickle cell disease or thalassemia o Smoking, current or former
      o Solid organ or blood stem cell transplant o Stroke or cerebrovascular disease, which affects blood flow to the brain
      o Substance use disorders

Centers for Disease Control and Prevention, "People Who Are at Higher Risk for Severe Illness", https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html          (last accessed Sept. 30, 2021).

[Docket No. 207 at 1, 3] (current motion citing that he has a number of CDC risk factors, such as diabetes, as well as other medical conditions like "inflamed thyroids, cancerous nudles, hyperlipidemia and gastroesophageal reflux disease"; Heroism Act Award); compare Docket No. 156 at 6, 11-12 (arguing his Heroism Act Award and medical conditions of diabetes (type 2), hypertension, inflamed thyroids, "possible cancerous noggles [sic] forming in chest area", possible knee surgery, and age); Docket No. 180 at 5 (arguing medical conditions of diabetes (type 2), hypertension, hyperlipidemia, inflamed thyroid, possible cancerous nodules forming in chest area, knee replacement, and the aging process); Docket No. 190 at 2 (Defendant positive for COVID-19); ECF No. 193 at 3 (in government's response to Defendant's Motion for Reconsideration, notation in Defendant's medical records that Defendant was asymptomatic with COVID-19).

Hardy states that he is having a hard time controlling his diabetes in prison. [Docket no. 206 at 3]. This court, however, notes that difficulty seems to stem, at least in part, due to poor food choices, about which the medical staff at the prison have counseled Hardy, along with a need to exercise and control his weight[8]. This court appreciates Hardy's right to refuse vaccination for the Covid-19 Delta virus; however, this refusal constitutes dismissal of an opportunity for "self-care" made available by the BOP.

Hardy has failed to establish how any of his medical conditions are either: (a) a terminal illness with an end of life trajectory; or (b) substantially diminishes his ability to provide self-care within the environment of the correctional facility and that he is not expected to recover." *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (neither hypertension nor high cholesterol amounts to an extraordinary reason for compassionate release given the high incidence of both

---

[8] Hardy's BOP medical records indicate that "although his glucometer readings are not terrible, his HgbA1c is poor"; therefore, a need for diet/exercise/weight control have been discussed with Hardy and specific recommendations have been made. Hardy's chart further shows that he refused the Covid-19 vaccine despite the provider's contention that he "begged him to reconsider."

conditions, "[t]hus, we cannot say either of those conditions makes the Defendant's case 'extraordinary.' Unfortunately, both are commonplace."); *United States v. Williams*, 2021 WL 414825 at *3 (M.D. La. Feb. 5, 2021) (denying compassionate release to an inmate with Type 2 diabetes and obesity because there was no evidence these conditions had diminished his ability to provide self-care while imprisoned); *United States v. Mondragon*, 2021 WL 951797 at *3-4 (E.D.Tex. Mar. 12, 2021) (finding that hypertension, diabetes, and obesity do not meet the criteria for compassionate release).

This court, therefore, must conclude, as it previously has done, that Hardy's medical conditions and/or the existence of COVID-19 do not amount to "extraordinary or compelling" reasons to reduce Hardy's sentence.

### ***Criminal History and Rehabilitation***

Hardy argues his rehabilitation efforts, as shown through his various educational and vocational certifications further amount to extraordinary and compelling circumstances warranting his early release. Hardy must, as a threshold matter, show that a reduction is warranted in light of all of the relevant §3553(a) factors.

Following the Fifth Circuit's mandate, this court must consider the nature and circumstances of the offenses and the history and characteristics of the defendant. At the time he was convicted, Hardy already had accumulated a long criminal record. The Government's response, and this court's previous Order, detail Hardy's criminal history:

Hardy's federal bank robbery in violation of 18 U.S.C. § 2113(a), is a crime of violence. *United States v. Smith*, 2020 WL 2078390, at *2 (5th Cir. 2020). On April 4, 2003, Defendant entered the Union Planters Bank in Jackson, Mississippi, pointed a gun at a teller, and demanded, "Get down, this is a robbery, I want hundreds, hurry up, no one move." [Docket no. 48 at ¶ 4].

15

Hardy pointed a gun at the bank teller during the robbery; thus, Hardy also was convicted of brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1). Hardy's underlying conviction was not his first violent offense. In fact, he was sentenced as a career offender and was on supervised release at the time of committing the instant offense. Id. at ¶¶ 19, 22, 38. He has a history of robberies going back to the year 1984. [Docket no. 48].

Although Defendant has been in custody approximately twenty years (since April 2003), this court noted that custody appears to be the only place that prevents Hardy from committing serious and violent crimes. Hardy continued to commit armed robbery in 2003 after five years of imprisonment for two different violent robberies and stints of imprisonment for parole violations for a period of nine years. *Id*. at ¶ 4, 24-25, 28-29; see also *Stuyvesant*, 2020 WL 1865771, at *7 (defendant's compassionate release request denied because, even assuming that the defendant suffers from end-stage renal disease, he is still a danger to the community as a repeat drug offender who committed offenses while suffering from the same condition).

This court notes that although the court is not bound by the Sentencing Commission's policy statement in U.S.S.G § 1B1.13 and its accompanying application notes when considering compassionate-release motions filed by prisoners, the policy statement is not wholly irrelevant. The Fifth Circuit has held that district court should still look to the policy statement for guidance when determining what constitutes "extraordinary and compelling reasons" for a sentence reduction based upon a compassionate-release motion. *See Thompson*, 984 F.3d at 433 ("Although not dispositive, the commentary to the § 1B1.13 informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release.").

Hardy, by way of his various motions and replies, argues that he is not a danger to the community. This court, however, notes that Hardy's circumstances have not changed since this

court denied his first motion for compassionate release. This court finds that all relevant § 3553(a) factors independently militate against a grant of compassionate release.

Hardy's sentence of 300 months (25 years) followed by a mandatory consecutive 84 months (7 years) is substantial for a reason—it (A) reflects the seriousness of Hardy's offense: bank robbery and brandishing a firearm during the commission of a crime of violence; (B) affords adequate deterrence to criminal conduct, as Defendant repeatedly engages in armed or violent robberies; (C) protects the public from further crimes of the Defendant, as noted supra; and (D) provides Defendant with needed educational/vocational training and medical care, which Defendant has and continues to receive in prison. [Docket no. 162 (Def. Mot. To Expond [sic] the Record & Exhibits)]. As Hardy's Presentence Investigation Report indicated, he was not receiving continuous medical care for his Type II diabetes prior to his incarceration,

Accordingly, this court reiterates that, even if Hardy had presented an "'extraordinary and compelling reason' that warrants a reduction of his sentence," which this court finds he has not, Hardy also unmistakably presents a danger to the community if this court were to release him back into society. [Docket no. 177 at 14-18; Docket no. 201 at 4-5] ("Even had [Hardy expounded his low pattern risk score], this court is unpersuaded that his lengthy and deplorable criminal history should be ignored and still finds that Hardy presents a real danger to the community if he were released."). Stated simply, the original sentence was a just punishment and was required to promote respect for the law while providing deterrence. Those factors have not changed. Hardy, thus, has not shown he is entitled to compassionate release.

This court now turns to a matter which bears upon Hardy's declaration of rehabilitation, and his contention that this court should view him as an individual wholly transformed from the man this court sentenced twenty years ago. On January 23, 2023, this court held a hearing

17

regarding Hardy's renewed motion for compassionate release, the motion sub judice. During that hearing, this court heard from Hardy all relevant evidence he wished to offer in support of his request for a reduced sentence and compassionate release from his incarceration.

Hardy, while pleading his case, stated for the first time that he had not used a "real firearm" during his underlying crime- a bank robbery. Hardy at first stated that it was a "toy gun". Then, when tis court challenged this "toy gun" testimony, Hardy changed his testimony, saying that the gun had no ammunition in it, thus rendering it inoperable. Pertinent excerpts from the hearing transcript [Docket no. 277] reflect his flip-flopping testimony:

THE COURT: And on this bank robbery, did you have a weapon?

THE DEFENDANT: Yes, sir.

THE COURT: And what kind of weapon did you have?

THE DEFENDANT: It was a fake -- toy weapon pretty much. It wasn't no ammunition in the weapon or anything, and it's in the report.

THE COURT: -- are you still saying you had a toy gun and not a real gun?

THE DEFENDANT: Your Honor, let me reiterate that a little bit, please, sir. My reference to a toy gun was because the gun could not shoot. It could not shoot, and it had no -- no ammunition in the gun. You couldn't even really pull the trigger on the gun. That was -- that was why I was referring to it, because it was no way that the gun could fire at all.

THE COURT: Now, there's a difference between a toy gun and a gun that is inoperable. So which one are you saying here?

THE DEFENDANT: Well, I apologize. I apologize. Let's turn that to a gun that was inoperable. I apologize. I used the basic street terminology in describing that, and I apologize and –

THE COURT: Why are you saying that it was inoperable?

THE DEFENDANT: Because it had been kept around at the residence for quite a while, and my uncle and a couple other people has tried to use it -- tried to use it for -- exactly, I think, one -- New Years Day, they tried to use it, and it wouldn't do anything. And actually, he just left it there. And –

18

THE COURT: So then what made the gun inoperable?

THE DEFENDANT: Well, what I do -- I don't really know that much about guns, but what I do know about that particular gun, Your Honor, was that it could not fire. That's all I knew about it.

THE COURT: Were there bullets in the chamber?

THE DEFENDANT: No, sir.

THE COURT: Did the Government recover any bullets?

THE DEFENDANT: Not that I know of, Your Honor. They shouldn't of, because I don't think there were any there. They took the gun out of the drawer where it was kept at, and I don't think -- in recalling back, it couldn't have been no bullets in there, because we know -- everybody in the house knew it couldn't fire.

This court, thereafter, sought to clarify the above assertions through the case files and record. In 2003, the year Hardy was sentenced, and for a few years subsequent to his sentencing, the United States District Court for the Southern District of Mississippi, did not have an electronic case management filing system. This court, thus, obtained physical files from the Clerk of Court, a process which took weeks of this court's time. Upon receiving said files, this court verified that Hardy pointed a "Lorcin .25 caliber semi automatic handgun, serial number 217600" at a bank teller while committing a robbery on April 4, 2003, at the Union Planters Bank in Jackson, Mississippi. Pursuant to the records obtained from the Federal Bureau of Investigations, Officer Mike Childress of the Jackson Police Department recovered said firearm, along with "one .25 caliber magazine" and "six live .25 caliber rounds".

Hardy, then, made false statements to this court. This court notes that as the court charged with sentencing a defendant (and modifying a defendant's sentence), it has broad discretion "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."

*Pepper v. United States*, 562 U.S. 476, 487, 131 S. Ct. 1229, 1239–40, 179 L. Ed. 2d 196 (2011) (quoting *Koon v. United States,* 518 U.S. at 113). This court  provided Hardy with ample opportunity to impress upon it why it should put more weight in his conduct for the past twenty years than his previous alleged "mistakes".  This court simply cannot place trust in Hardy's statements of rehabilitation in light of his apparent misrepresentations.

### ***Disparate Sentence***

Hardy next argues that his 384-month sentence is disparate from others in similar circumstances. Hardy, however, provides no authority comparing his sentence to that of other similarly situated career offenders, who received mandatory sentences as a result of 18 U.S.C. § 924(c)[9] convictions. His sentence fell within the applicable guideline range: a guideline range that would have been 360 months to life, but for the statutory cap of 25 years (300 months) for the bank robbery. Moreover, Defendant's mandatory minimum consecutive sentence for brandishing a firearm during a crime of violence was seven (7) years (84 months). The Court, therefore, sentenced Defendant to a guideline range sentence totaling 384 months. Guideline range sentences are presumptively reasonable. *United States v. Rodriguez-De la Fuente*, 842 F.3d 371, 374 (5th Cir. 2016) (citing *United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006)); *United States v. Barton,* 879 F.3d 595, 602 (5th Cir. 2018) ("we presume that within-Guidelines sentences are substantively reasonable.").

Further, despite Hardy's contentions, his argument for compassionate release based on an unfair sentence is not properly comparable to individuals whose § 924(c) convictions stacked at the time of sentencing , but which may no longer be stacked due to intervening changes in law. *See e.g., United States v. Cooper*, 996 F.3d 283, 286-87 (5th Cir. 2021); *United States v. McCoy*,

---

[9] Offenses under 18 U.S.C. § 924(c) involve the use or carrying of a firearm during and in relation to a crime of violence or trug trafficking crime, or the possession of a firearm in furtherance of those crimes.

981 F.3d 271, 285-86 (4th Cir. 2020); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021); *United States v. Hammer*, 2021 WL 3603591 at *3 (E.D.Tex. Aug. 13, 2021) ("For example, courts grant compassionate release at a remarkable rate for inmates subject to the now-abolished § 924(c) sentencing-stacking.").

This court is not persuaded that this factor constitutes extraordinary and compelling circumstances to warrant Hardy's release. Further, as this court previously has held, Hardy was sentenced under the Sentencing Guidelines to serve a sentence that adequately and justly reflects his criminal history and conduct, including the commission of Hardy's underlying offense while on parole for two other crimes.

### *Heroism Award*

Hardy again relies, in part, on his Heroism Act Award as a basis for compassionate release. This award, granted to Hardy for saving a guard's life, however, does not amount to an extraordinary and compelling basis to release him. *United States v. Early*, 2020 WL 4576281, at *1 (W.D. Va. Sept. 20, 2019); *United States v. Ambrose*, 2020 WL 1670396, at *3 (S.D. Ala. Apr. 3, 2020) (denying without prejudice defendant's motion for compassionate release because defendant's intervention on behalf a guard being attacked by another inmate was not an "Other Reason" comparable or analogous to the specific, enumerated justifications). Hardy, further, was granted a monetary award by the BOP for his act.

This court finally notes that Hardy contracted the Covid-19 virus in 2020 and, fortunately, recovered. Although there is not yet scientific certainty regarding the risk of reinfection, courts addressing the matter have concluded that the risk of reinfection is mitigated such that compassionate release is not justified for an inmate who has contracted and recovered from the virus. *See, e.g., United States v. Wiltshire*, 2020 WL 7263184, at *6 (E.D. Pa. Dec. 9, 2020) ("this

Court is unable to find a case granting compassionate release to a defendant who recovered from COVID-19 and was asymptomatic). To the contrary, the consensus is that such a circumstance does not warrant release.

This court does not downplay Hardy's medical concerns; nor does it suggest that Hardy's apprehensions about the COVID-19 pandemic are unreasonable. After the weighing the evidence before it, however, this court finds that Hardy has  failed to prove that his incarceration is "extraordinary and compelling" under the § 3582(c)(1)(A)(i) framework. *See United States v. Stowe*, No. CR H-11-803(2), 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019) (citation omitted) (stating that the defendant generally "has the burden to show circumstances meeting the test for compassionate release).

This court certainly has given due consideration to Hardy's post-sentencing rehabilitative efforts, which, in this court's eye, are admirable in the realm of educational and vocational studies. This court further has duly considered Hardy's lack of disciplinary actions while incarcerated and his Heroism Award. This court, however, finds that Hardy has not shown an "extraordinary and compelling" reason for Compassionate Release. This court, further, finds that §3553(a) factors weigh heavily against a reduction to Hardy's sentence.

## CONCLUSION

IT IS, THEREFORE, ORDERED that Petitioner Hardy's "Emergency Motion" for Compassionate Release [Docket no. 206] is DENIED.

IT IS FURTHER ORDERED that documents 158, 162, 168, 174 and 190 are dismissed as moot.

SO ORDERED this the 1st day of August, 2023.

/s/HENRY T. WINGATE
UNITED STATES DISTRICT COURT JUDGE