**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**CURTIS J. HARDY**

**vs.** **CRIMINAL No. 3:03-CR-68-HTW-LGI-1**
**CIVIL No. 3:16-CV-460-HTW**

**UNITED STATES OF AMERICA**

**OPINION & ORDER**

BEFORE THIS COURT are Movant Curtis J. Hardy's ("Defendant") Motions for Recusal **[255],** for Compassionate Release **[255-1], [256], [257],** to Appoint Counsel **[256], [268],** for a Status Update **[258],** and for Oral Argument **[269].** For the following reasons, each Motion is DENIED.

## I. BACKGROUND

In 2003, a jury convicted Defendant of bank robbery ("Count 1") in violation of Title 18 U.S.C. § 2113(a) & (d), and brandishing a firearm during a crime of violence ("Count 2") in violation of 18 U.S.C. § 924(c)(1)(A)(ii). ***See*** **Order [177] at 1.** This Court subsequently sentenced Defendant to 300 months on Count 1 and 84 months on Count 2, with those sentences to run consecutively. ***See id.*****; Minute Entry [38]; J. [41].** Defendant appealed his conviction and sentence, and the U.S. Court of Appeals for the Fifth Circuit affirmed in a short *per curiam* decision. *United States v. Hardy*, 101 F. App'x 959, 960 (5th Cir. 2004)**;** ***see*** **Op. of USCA [50]; J. of USCA [51].** The U.S. Supreme Court thereafter denied Defendant's petition for writ of certiorari. *See Hardy v. United States*, 543 U.S. 1072, 1072 (2005).

In December 2005, Defendant filed a Motion **[52]** to Vacate Sentence pursuant to 28 U.S.C. § 2255.[1] In February 2007, this Court denied that Motion **[52],** *see United States v. Hardy*, No. CIV 305CV784, 2007 WL 683941, at *1 (S.D. Miss. Feb. 28, 2007)**; Order [73],** as well as Defendant's subsequent Motion **[76]** for a certificate of appealability, ***see*** **Order [82].** Defendant filed a Notice **[81]** of Appeal anyway, which the Fifth Circuit dismissed for lack of jurisdiction. ***See*** **J. of USCA [83].** From 2009 to 2016, Defendant filed three separate Motions **[85], [88], [89],** all styled as seeking "Relief from Judgment," as well as a Motion **[92]** for *Nunc Pro Tunc* requesting this Court grant him a new trial. The Court denied those Motions **[85], [88], [89], [92],** ***see*** **Order [96],** as well as two separate Motions **[98], [104]** for reconsideration, ***see*** **Order [110]; Order [111].**

In June 2016, with permission from the Fifth Circuit, ***see*** **J. USCA [112],** Defendant filed a successive Motion **[114]** to Vacate pursuant to Section 2255. This Court denied that successive Motion **[114],** ***see*** **Order [121],** and the Fifth Circuit denied Defendant's request for a certificate of appealability. **Order USCA [154].** In July 2017, Defendant filed, and this Court denied, a Motion **[122]** and supplemental Motion **[123]** to Reconsider the Court's prior Order **[121]** denying the successive Motion **[114]** to Vacate. *See Hardy v. United States*, No. 3:03-CR-68-1, 2017 WL 5986119, at *1 (S.D. Miss. Dec. 1, 2017)**; Order [126].** Thereafter, Defendant filed another Motion **[130]** and supplemental Motion **[135]** for Relief from Judgment **[41].** The Court denied

---

[1] Section 2255(a) provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

those Motions **[130], [135],** ***see*** **Order [140],** as well as Defendant's subsequent Motion **[141]** for reconsideration of that Order **[140],** ***see*** **Order [142].**

In January 2020, Defendant filed a Motion **[156]** for Compassionate Release pursuant to 18 U.S.C. 3582(c).[2] This Court denied that Motion **[156],** *see United States v. Hardy*, No. 3:03-CR-68, 2020 WL 5514154, at *1 (S.D. Miss. Sept. 13, 2020)**; Order [177],** as well as Defendant's Motion **[180]** for reconsideration of that denial, *see United States v. Hardy*, No. 3:03-CR-68, 2021 WL 1083448 (S.D. Miss. Mar. 19, 2021), *vacated and remanded*, No. 20-60859, 2022 WL 402429 (5th Cir. Feb. 9, 2022)**; Order [201].** In February 2022, the Fifth Circuit reversed and remanded those Orders **[156], [177],** for consideration of the Fifth Circuit's subsequent decision in *United States v. Shkambi*, 993 F.3d 388 (5th Cir. 2021). *See Hardy*, 2022 WL 402429, at *1. On remand, this Court denied Defendant's Second Motion **[206]** for Compassionate Release. *United States v. Hardy*, No. 3:03-CR-68, 2023 WL 4919667, at *1 (S.D. Miss. Aug. 1, 2023)**;** ***see*** **Order [229].** The Fifth Circuit affirmed that denial. *See United States v. Hardy*, No. 23-60428, 2024 WL 4371124, at *1 (5th Cir. Oct. 2, 2024)**; J. USCA [253].**

In all, since Judgment **[41],** Defendant has filed more than fifty motions with this Court, eight Notices **[81], [101], [128], [139], [146], [178], [202], [231]** of Appeal**,** and approximately seven Petitions for Writs of *Mandamus* to the Fifth Circuit. ***See, e.g.*****, USCA Order [103]; J. USCA [127]; USCA Clerk Order [196]; USCA Order [232]; J. USCA [238]; USCA Order**

---

[2] Section 3583(c) provides in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction [] (ii) . . . and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission.

**[251]; USCA Order [272].** Keeping with his reputation, now before the Court are seven Motions, including a Motion **[255]** to Substitute, Disqualify, or Recuse this Judge from any further matters in this case; a *third* Motion **[255-1]** for Compassionate Release and two subsequent Motions **[256], [257]** to Supplement that Motion **[255-1]**; two Motions **[256],**[3] **[268]** to Appoint Counsel; a Motion **[258]** for a Status Update; and a Motion **[269]** for Oral Argument.[4]

As this Court has said *several* times before, ***see, e.g.*****, [73], [82], [96], [110], [121], [126], [140], [177], [201], [229],** Defendant is not entitled to the relief requested. Accordingly, the Motions to Recuse **[255],** for Compassionate Release **[255-1], [256], [257],** and to Appoint Counsel **[256], [268]** are DENIED. The Motions for a Status Update **[258]** and for Oral Argument **[269]** are therefore DENIED as MOOT.

## II. DISCUSSION

### A. Motion [255] for Recusal

"Two statutes govern the recusal of district judges: 28 U.S.C. § 144 and 28 U.S.C. § 455". *United States v. Alexander*, 726 F. App'x 262, 262 (5th Cir. 2018) (unpublished). "Section 144 requires a judge to reassign a case in the event of actual bias," *see id.* at 262–63 (citation omitted), it provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file

[3] Docket entry 256 contains both a "Motion to Appoint Counsel" and a "Motion to Supplement" Defendant's Motion for Compassionate Release.

[4] Defendant filed another Motion **[260]** seemingly seeking compassionate release from CHIEF JUDGE OZERDEN. This Court will not address that filing.

> it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

Here, as was the case in *Alexander*, Defendant has not met the "pleading requirements to obtain relief under [Section] 144 because he did not submit the required affidavit delineating facts and reasons that would convince a reasonable person of the existence of bias. *Alexander*, 726 F. App'x at 263.

Moreover, "Section 455 requires a judge to disqualify himself in any proceeding where 'his impartiality might reasonably be questioned.'" *Id.* (quoting 28 U.S.C. § 455(a)). Section 455 further provides that a judge "shall also disqualify himself in the following circumstances":

> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; (2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it; (3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy; (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding; (5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person: (i) Is a party to the proceeding, or an officer, director, or trustee of a party; (ii) Is acting as a lawyer in the proceeding; (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding; (iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

Defendant's Motion **[255]** makes several meritless contentions. A few relate to this Court's purported "delay" in deciding Defendant's motions. Defendant argues that "Judge Wingate [has] intentionally prolonged rulings in most of the filings submitted on behalf of Defendant," ***see*** **[255] at 2;** that "Judge Wingate intentionally falsified the record" by stating during a hearing that an order would be published on January 30, 2023, and instead publishing said Order **[229]** in August 2023; ***see*** **[255] at 3;** that a member "Judge Wingate['s staff]" made misrepresentations concerning

publication of the same Order **[229],** ***see*** **[255] at 3–4;** and that "Judge Wingate intentionally" ignored Defendant's Motion **[234]** for an Extension of Time to file a Motion to Reconsider that same Order **[229],** ***see*** **[255] at 6.**

These arguments do not indicate bias, prejudice, or this Judge's lack of impartiality. *See Fugedi v. United Rentals (N. Am.) Inc.*, No. 3:19-CV-00249, 2024 WL 1658249, at *12 (S.D. Tex. Apr. 17, 2024), *aff'd sub nom. Fugedi v. Initram, Inc.*, 150 F.4th 690 (5th Cir. 2025), *cert. denied*, 146 S. Ct. 1612, 224 L. Ed. 2d 17 (2026) (listing cases). Under Section 455, a judge's "alleged bias must be personal, as distinguished from judicial, in nature." *United States v. Scroggins*, 485 F.3d 824, 830 (5th Cir. 2007) (quoting *Phillips v. Joint Legis. Comm. on Performance & Expenditure Rev.*, 637 F.2d 1014, 1020 (5th Cir. 1981)). Defendant's grievances reflect his desire to control when this Court publishes its orders and do not warrant the relief sought. Nevertheless, Defendant's Motion **[255]** does not cite the relevant statutes and caselaw, nor does it allege why any apparent delay would give rise to recusal.[5]

Defendant's remaining contentions fare no better. He argues that the Court deprived him of an opportunity to "allocute" at the Court's January 23, 2023, motions hearing, ***see*** **[255] at 4,** and improperly weighed evidence concerning one of the Court's prior denials of compassionate release, ***see id.*** **at 5–6.** Adverse "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," especially in the absence of an "extrajudicial source." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Defendant offers no evidence of an "extrajudicial source" in this Court's decisions. *See id.* Moreover, as explained, Defendant's grievances are "judicial," not

---

[5] That this Court's Order **[229]** denying Defendant's Motion **[206]** for Compassionate Release was entered the same day that Defendant filed a Petition **[228]** for Writ of *Mandamus* is of no substance to this Motion **[255].**

"personal." *See Scroggins*, 485 F.3d at 830. Accordingly, Defendant is not entitled to relief pursuant to Section 455, and his Motion **[255]** for Recusal is DENIED.

**B. Motions [256], [268] to Appoint Counsel**

The Fifth Circuit held in *United States v. Robinson*, 542 F.3d 1045, 1052 (5th Cir. 2008), that "even if a § 3582(c)(2) proceeding was collateral to the original criminal case, the decision to appoint counsel is discretionary 'in the interest of justice.'" *United States v. Diaz*, No. 22-40044, 2023 WL 1879404, at *3 (5th Cir. Feb. 10, 2023) (unpublished); *see United States v. Carvajal*, 2025 WL 3565841, at *1 (5th Cir. Dec. 12, 2025) (unpublished) ("Although counsel may be appointed in a [Section] 3582(c)(2) proceeding when the interests of justice so require, defendants are not entitled to counsel as of right."). Here, Defendant has not shown that the interests of justice warrant appointing counsel. His arguments are "not factually complicated" and Defendant "has adequately presented them to" this Court. *Diaz*, 2023 WL 1879404, at *3. Accordingly, Defendant's Motions **[256], [268]** to Appoint Counsel are DENIED.

**C. Motion [255-1] and Supplemental Motions [256], [257] for Compassionate Release**

1. Legal Standard

The Court's authority to modify a term of imprisonment once it has been imposed is narrowly defined. One source of that authority is Title 18 U.S.C. § 3582(c). In 1984, Congress passed the Sentencing Reform Act, which granted courts the authority to reduce a federal prisoner's term of imprisonment upon a finding that, *inter alia*, "extraordinary and compelling reasons warrant such a reduction." *See* Pub. L. No. 98-473, § 212, 98 Stat. 1837, 1998–99 (codified as amended at 18 U.S.C. § 3582(c)(1)(A)). As originally enacted, subsection (c)(1)(A) provided that only the Director of the Bureau of Prisons ("BOP") could file a motion for "compassionate release." *See Ward v. United States*, 11 F.4th 354, 359 (5th Cir. 2021). That

changed in 2018, when Congress amended Section 3582 with the First Step Act. *See* Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239.

As amended, an incarcerated individual may petition the court directly for a sentence reduction only after fully exhausting all administrative remedies with the BOP, or after 30 days from the warden's receipt of the request, whichever occurs first. 18 U.S.C. § 3583(c)(1)(A); *see United States v. Chambliss*, 948 F.3d 691, 692–93 (5th Cir. 2020). Though defendants may now file a motion for compassionate release directly with the court, the requirements for relief largely remain the same. The Fifth Circuit has held:

> [A]fter exhausting all administrative remedies . . . [A] prisoner seeking compassionate release must overcome three hurdles. First, "extraordinary and compelling reasons" must justify the reduction of his sentence. Second, the reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." Finally, the prisoner must persuade the district court that his early release would be consistent with the sentencing factors in 18 U.S.C. § 3553(a). "The district court has discretion to deny compassionate release if the Section 3553(a) factors counsel against a reduction."

*United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022) (first quoting *Ward*, 11 F.4th at 359; then quoting 18 U.S.C. § 3582(c)(1)(A); and then quoting *Ward*, 11 F.4th at 360).

Congress left what qualifies as "extraordinary and compelling reasons" to the United States Sentencing Commission. *See id.*; *Shkambi*, 993 F.3d at 391 ("[Congress] instructed the Commission to 'promulgat[e] general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A)' that 'describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.'" (quoting 28 U.S.C. 993(t))). Section 1B1.13(b) of the Guidelines provides several categories of circumstances that a court may consider to be "extraordinary and compelling reasons," including: "(1) Medical Circumstances of the Defendant . . . (2) Age of the Defendant . . . (3) Family Circumstances of the Defendant . . . (4) Victim of Abuse . . . (5) Other reasons . . .

[and] (6) Unusually Long Sentence." After considering whether a reduction would be "consistent with the applicable policy statements issued by the Sentencing Commission," the court must consider the relevant sentencing factors set forth in Title 18 U.S.C. § 3553(a).[6] Even if a Defendant establishes extraordinary and compelling reasons, the district court retains ultimate discretion to deny the motion if the Section 3553(a) factors counsel against a reduction. *Chambliss*, 948 F.3d at 693–94.

The Court concludes that Defendant's various Motions **[255-1], [256], [257]** should be DENIED, as extraordinary and compelling reasons do not exist to justify Defendant's release and the Section 3553 factors counsel against reducing Defendant's sentence. As explained above, this Court has twice denied this *same* relief and addressed many of the very arguments Defendant presents in these 59 pages of Motions **[255-1], [256], [257].** Therefore, the Court will not reanalyze arguments rejected in previous entries.

2. Extraordinary and Compelling Reasons

A "sentencing court 'cannot deny a second or subsequent motion for compassionate release for the reasons stated in a prior denial where the subsequent motion presents changed factual circumstances and it is not possible to discern from the earlier order what the district court thought about the relevant facts.'" *United States v. Hernandez*, No. 24-10734, 2026 WL 228770, at *2 (5th Cir. Jan. 28, 2026) (quoting *United States v. Handlon*, 53 F.4th 348, 353 (5th Cir. 2022)).

[6] Section 3553(a) provides in part:

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Accordingly, a court's obligation in a given case is simply to "explain [its] decision and demonstrate that [it] considered the [Defendant's] arguments." *See Concepcion v. United States*, 597 U.S. 481, 500–01 (2022).

As to whether extraordinary and compelling reasons warrant release, Defendant's Motion **[255-1]** appears to make two arguments which Defendant now makes for the third time: (1) that his medical condition puts him at increased risk of "serious illness or death should he contract COVID-19," ***see*** **[255-1] at 5–8,** and (2) a "Heroism Award" received for saving a prison guard's life,[7] ***see id.*** **at 13–14.** This Court's prior Order **[229]** considered, and rejected, Defendant's medical-related claims:

> Hardy has not presented any new medical conditions or factors that this Court already did not take under advisement during Defendant's original request for compassionate release, including after his Motion for Reconsideration when Defendant tested positive for COVID-19. **[229] at 13–14; *see* [177] at 11–13 (discussing Defendant's arguments related to COVID-19).**

The same is true for his "Act of Heroism" award:

> Hardy again relies, in part, on his Heroism Act Award as a basis for compassionate release. This award, granted to Hardy for saving a guard's life, however, does not amount to an extraordinary and compelling basis to release him. *United States v. Early*, 2020 WL 4576281, at *1 (W.D. Va. Sept. 20, 2019); *United States v. Ambrose*, 2020 WL 1670396, at *3 (S.D. Ala. Apr. 3, 2020) (denying without prejudice defendant's motion for compassionate release because defendant's intervention on behalf a guard being attacked by another inmate was not an "Other Reason" comparable or analogous to the specific, enumerated justifications). **[229] at 21; *see* [177] at 13–14 ("This court does not agree that [Defendant's] one-time award for notifying prison staff that a guard needed medical assistance amounts to the 'extraordinary and compelling circumstances' justifying his early release.").**

---

[7] While in custody, Defendant received a "Monetary Special Award" for an "Act of Heroism." ***See, e.g.*****, Order [177] at 13–14.** The BOP cited the "justification" for the award as follows:

> On September 27, 2009, at approximately 5:15 p. m., during the serving of the evening meal, . . . [Defendant] approached Officer K. Sneed and informed him that the Activities Lieutenant had collapsed inside the inmate dining hall. Officer Sneed immediately notified medical staff for assistance who promptly responded. The staff member was taken to a local hospital for further medical attention. [Because of Defendant's] . . . quick response to notify staff of this medical emergency, the staff member received timely medical attention.

Moreover, Defendant's only "new" medical-related argument is that he has twice received medical treatment after going into "diabetic shock." ***See, e.g.*, [257] at 3–5.** But Defendant does not contend that his diabetes is a "terminal illness with an end-of-life trajectory," *see* U.S.S.G. § 1B1.13(b)(1)(A), and the Court finds that the condition does not "substantially diminish [his] ability . . . to provide self-care," *see* § 1B1.13(b)(1)(B). Aside from citing the two unfortunate medical episodes, the Court already "consider[ed]" Defendant's arguments concerning his diabetic condition. *See Concepcion*, 597 U.S. at 502. This Court's prior Order **[229]** explained that despite Defendant's claims of difficulty "controlling his diabetes in prison," his own "poor food choices, about which the medical staff at the prison have counseled [him], along with a need to exercise and control his weight," were the primary cause of that issue. ***See* [229] at 14; *see also id.* at 17 ("As [Defendant's] Presentence Investigation Report indicated, he was not receiving continuous medical care for his Type II diabetes prior to his incarceration.").** Additionally, while Defendant generally alleges that the BOP "continues to act in willful defiance of [his doctor's] orders," *i.e.*, giving the prescribed amount of insulin and providing Defendant with a "diabetic snack," Defendant fails to reckon with how the BOP managed to control the condition for the past two decades. Even more, Defendant's grievances here seem to relate only to the staff at FCI Allenwood. But, as of June 2025, Defendant resided at FCI Texarkana.[8] ***See* Change of Address [261].** The Court rejects Defendant's health-related arguments.

Defendant next argues that the "[h]arshness of [his] [i]ncarcertation" at FCI Allenwood is exacerbated by "[p]andemic lockdown[s]," ***see* [255-1] at 9–12,** "lockdown[s] due to exposure to

[8] On June 27, 2025, Defendant notified the Court of his transfer to FCI Texarkana. ***See* [261].** Several of Defendant's arguments relate only to his confinement at FCI Allenwood. ***See* [255-1] at 1; [256] at 6; [257] at 2, 7.** Defendant makes no arguments concerning FCI Texarkana.

fentanyl,"[9] ***see* [256] at 2–5,** and staff shortages, ***see* [257] at 5.** As discussed, Defendant no longer resides at FCI Allenwood, and the Court is well within its authority to reject any arguments related to that facility as moot. *See United States v. Bravo-Escalera*, No. 4:19-CR-00285, 2025 WL 1668212, at *4 (E.D. Tex. June 12, 2025) ("[T]he increased risk from an outbreak or emergency must exist at the time relief would be granted."). Nevertheless, jail conditions that are applicable to "all inmates who are currently imprisoned" are "not sufficient grounds to justify a finding of extraordinary and compelling circumstances." *United States v. Arzon*, No. 1:11-CR-43(2), 2025 WL 1799326, at *7 (E.D. Tex. June 27, 2025) (citation omitted). Such conditions of confinement, *i.e.*, lockdowns or even staff shortages, are "more ordinary than . . . extraordinary," and thus not a basis for compassionate release. *See id.* The Court finds that Defendant's allegations concerning the "[h]arshness" of his confinement are not extraordinary and compelling.

Lastly, Defendant argues that a "change in the law" constitutes extraordinary and compelling circumstances justifying his release. ***See* [255-1] at 15–19.** Guidelines Section 1B1.13(b)(6) provides that:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

---

[9] Defendant's first supplemental Motion **[256]** for Compassionate Release alleges that FCI Allenwood was on "complete lockdown due to airborne exposure to fentanyl, leading to the evacuation of the housing unit, hospitalization of over five staff members, and a[n] undisclosed number of inmates hospitalized. ***See* [256] at 3.** Here, the Court finds it appropriate to note that Defendant does not allege any *personal* contact, interaction, or hospitalization from "airborne exposure to fentanyl" while in federal custody.

Pursuant to the Guidelines Manual in effect at the time of sentencing, this Court sentenced Defendant as a career offender for having "two prior felony convictions involving violence." *See* U.S. SENT'G GUIDELINES MANUAL § 4B1.1(a) (U.S. SENT'G COMM'N 2002)**; [48] at 4, 9 (¶¶ 10, 37–41); [229] at 16.** The Guidelines have consistently stated that multiple prior felony convictions may not be counted separately for career offender purposes when they are "related." *See, e.g.*, *United States v. Hayes*, 342 F.3d 385, 388 (5th Cir. 2003). The 2002 Guidelines defined "related" like this:

> Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing.

The Sentencing Commission has since amended what qualifies as "related." Section 4A1.2(a)(2) of the 2025 Guidelines Manual provides:

> Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). . . . If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Treat any prior sentence covered by subparagraph (A) or (B) as a single sentence. See also §4A1.1(d).

Defendant claims that he would not be sentenced as a career offender under the 2025 Guidelines because his "two prior felony convictions" were "not separated by an intervening arrest" and the respective sentences were "imposed on the same day." ***See*** **[255-1] at 18.** Further, Defendant avers that this "change in the law" constitutes extraordinary and compelling reasons under Guidelines Section 1B1.13(b)(6).

Defendant's "change in the law" argument fails. Guidelines Section 1B1.13(b)(6) explicitly excludes "amendments to the Guidelines Manual that [have] not been made retroactive."

Amendment 709, which Defendant relies on here, is not retroactive. *See* U.S.S.G. § 1B1.10(d); *see Rutherford v. United States*, 608 U.S. 454, 1335 (2026); *see also United States v. Austin*, 125 F.4th 688, 693 (5th Cir. 2025) ("A non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under [Section] 3582(c)(1)."); *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) ("[N]on-retroactive changes in criminal law . . . are neither extraordinary nor compelling."). Accordingly, Defendant cannot establish extraordinary and compelling circumstances warranting his release.

3. Section 3553(a) Sentencing Factors

This Court may deny a motion for compassionate release where the Section 3553(a) factors independently support the judgment. *See United States v. Cox*, No. 24-60505, 2025 WL 3499313, at *1 (5th Cir. Dec. 5, 2025) (citing *United States v. Jackson*, 27 F.4th 1088, 1093 n.8 (5th Cir. 2022)). Notwithstanding that Defendant cannot show extraordinary and compelling reasons warranting his release, *see supra* pp. 9–14, the Section 3553(a) factors similarly counsel against release.

Defendant argues that he is rehabilitated, remorseful, and has an "exemplary institutional record." ***See* [255-1] at 21.** This Court previously rejected Defendant's rehabilitation claims,

concluding that after Defendant made false statements to the Court,[10] the Court "simply [could not] place trust in [Defendant's] statements of rehabilitation." ***Id.* at 19–20.** Moreover, that same Order **[255-1]** addressed the remainder of Defendant's contentions regarding the Section 3553(a) factors:

> Although Defendant has been in custody approximately twenty years (since April 2003), this court noted that custody appears to be the only place that prevents Hardy from committing serious and violent crimes. [Defendant] continued to commit armed robbery in 2003 after five years of imprisonment for two different violent robberies and stints of imprisonment for parole violations for a period of nine years. . . . [Defendant], by way of his various motions and replies, argues that he is not a danger to the community. This court, however, notes that [Defendant's] circumstances have not changed since this court denied his first motion for compassionate release. This court finds that all relevant [Section] 3553(a) factors independently militate against a grant of compassionate release. [Defendant's] sentence . . . is substantial for a reason—it (A) reflects the seriousness of [the] offense: bank robbery and brandishing a firearm during the commission of a crime of violence; (B) affords adequate deterrence to criminal conduct, as Defendant repeatedly engages in armed or violent robberies; (C) protects the public from further crimes of the Defendant, . . . and (D) provides Defendant with needed educational/vocational training and medical care, which Defendant has and continues to receive in prison. . . . Accordingly, this court reiterates that, even if [Defendant] had presented an "'extraordinary and compelling reason' that warrants a reduction of his sentence," which this court finds he has not, [he] also unmistakably presents a danger to the community if this court were to release him back into society. . . . Stated simply, the original sentence was a just punishment and was required to promote respect for the law while providing deterrence. Those factors have not changed. [Defendant], thus, has not shown he is entitled to compassionate release. ***Id.* at 16–17.**

[10] At this Court's January 23, 2023, motions hearing, Defendant stated "that he had not used a 'real firearm' during" his federal conviction for bank robbery. ***See* [229] at 17–18.** While Defendant first stated that he used a "toy gun" to commit the crime, he later stated instead that he used a real gun with "no ammunition." ***Id.* at 18. *Compare* Tr. [227] at 26 ("It was a fake [] toy weapon."), *with id.* at 27 ("[T]he gun was a semi-automatic 25-caliber handgun, so it was not a toy weapon that was used."), *and id.* at 29 ("My reference to a toy gun was because the gun could not shoot . . . and it had no . . . ammunition in [it].").** The Court thereafter reviewed the record in Defendant's case and instead discovered that Defendant fabricated these statements:

> Upon receiving said files, this court verified that Hardy pointed a "Lorcin .25 caliber semi automatic handgun, serial number 217600" at a bank teller while committing a robbery on April 4, 2003, at the Union Planters Bank in Jackson, Mississippi. Pursuant to the records obtained from the Federal Bureau of Investigations, Officer Mike Childress of the Jackson Police Department recovered said firearm, along with "one .25 caliber magazine" and "six live .25 caliber rounds."

For those same reasons, the Section 3553(a) factors *still* do not support granting Defendant compassionate release. Therefore, Defendant's Motions **[255-1], [256], [257]** are DENIED.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Defendant Curtis Hardy's Motion **[255-1]** and Supplemental Motions **[256], [257]** for Compassionate Release pursuant to 18 U.S.C. § 3582 are DENIED.

**IT IS FURTHER ORDERED AND ADJUDGED** that Defendant Curtis Hardy's Motion **[256]** for Recusal is DENIED.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Defendant Curtis Hardy's Motions **[256], [268]** for Appointment of Counsel are DENIED.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Defendant Curtis Hardy's Motions for Status Update **[258]** and for Oral Argument **[269]** are DENIED as MOOT.

**SO ORDERED this the 23rd day of September, 2026.**

**/s/ HENRY T. WINGATE**
**UNITED STATES DISTRICT COURT JUDGE**